1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) Case No. CV 14-1409-DMG (JEMx) |
| Plaintiff, | ) **ORDER GRANTING PLAINTIFF'S** |
| vs. | ) **APPLICATION FOR PRELIMINARY** |
| | ) **INJUNCTION** |
| FLEET MUTUAL WEALTH LIMITED, and MWF FINANCIAL LIMITED, d/b/a MUTUAL WEALTH, | ) **[DOC # 4]** |
| Defendants, | ) |
| and | ) |
| RISORT PARTNERS, INC., HULLSTAR CAPITAL LLP, CAMBER ALLIANCE LLP, KIMROD ESTATE LLP, and MIDLCORP TRADE LTD., | ) |
| Relief Defendants. | ) |

This matter is before the Court on the Order to Show Cause ("OSC") why the Security and Exchange Commission's ("SEC") Application for a Preliminary Injunction should not be granted.  [Doc. ## 4, 18.]  The Court held a hearing on the matter on March 17, 2014.  Defendants did not make an appearance.  For the reasons set forth below, Plaintiff's Application for a Preliminary Injunction is **GRANTED**.

# I.
## BACKGROUND

Defendants Fleet Mutual Wealth and MWF Financial Limited (collectively "Mutual Wealth") operate an investment scheme purporting to use a high-frequency trading strategy to generate returns of 2% to 3% per week for investors.  (Compl. ¶ 1.)  On February 25, 2014, the SEC filed a Complaint against Defendants Fleet Mutual Wealth Limited and MWF Financial Limited, d/b/a Mutual Wealth,[1] and Relief Defendants Risort Partners, Inc., Hullstar Capital LLP, Camber Alliance LLP, Kimrod Estate LLP, and Midlcorp Trade LTD.  [Doc. # 1.]  Since filing the Complaint, the SEC has learned that both Hullstar and Risort Partners are part of "Fleet Mutual Wealth Group."  (Declaration of Melissa Armstrong ¶ 5 [Doc. # 21].)

The Complaint raises the following claims:  (1) violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Securities Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 by Mutual Wealth; (2) violations of Sections 17(a)(1)-(3) of the Securities Act, 15 U.S.C. § 77q(a)(1)-(3), by Mutual Wealth; (3) violations of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and e(c), by Mutual Wealth; and (4) disgorgement of ill-gotten funds by the Relief Defendants.  [Doc. # 1.]

On February 25, 2014, the SEC filed an *ex parte* application for a temporary restraining order ("TRO") and OSC why a preliminary injunction should not be granted. [Doc. # 4.]  That same day, the Court held an *ex parte* hearing on the matter and ordered a supplemental declaration regarding the evidentiary basis for the requested TRO.  [Doc. # 16.]  On February 26, 2014, the SEC filed the Supplemental Declaration of H. Norman Knickle.  [Doc. # 14.]  The Court issued a TRO and OSC why a preliminary injunction should not be granted on March 4, 2014.  [Doc. ## 17-18.]

---

[1] Hereinafter, "Mutual Wealth" refers collectively to Fleet Mutual Wealth and MWF Financial Limited.  Mutual Wealth is allegedly a registered trademark of MWF Financial Limited.  (Declaration of H. Norman Knickle ¶ 3, Exh. 1 pg 11 [Doc. # 12].)

The TRO set a deadline of March 10, 2014 for Defendants to file any documents in opposition to the issuance of a preliminary injunction.  [Doc. # 18.]  To date, none of the Defendants have appeared in the case.  The TRO also ordered the SEC to file proofs of service on Defendants no later than March 13, 2014.  [Doc. # 18.]  On March 13, 2014, the SEC filed a declaration regarding service.  [Doc. # 20.]  That same day, the SEC also filed a supplemental declaration regarding developments in the SEC's investigation since the Court issued the TRO.  [Doc. # 21.]

## II.

## LEGAL STANDARD

Under Section 20(b) of the Securities Act and Section 21(d) of the Securities Exchange Act, the SEC may obtain a preliminary injunction upon a showing of a (1) *prima facie* case of previous violations of federal securities laws and (2) a reasonable likelihood that the wrong will be repeated.  *S.E.C. v. Schooler*, 902 F. Supp. 2d 1341, 1344-45 & n.2 (S.D. Cal. 2012) (collecting cases); *see also S.E.C. v. Carter Hawley Hale Stores, Inc.*, 760 F.2d 945, 947 (9th Cir. 1985); *Sec. & Exch. Comm'n v. United Fin. Grp., Inc.*, 474 F.2d 354, 358 (9th Cir. 1973).

Since the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), some District Courts in this Circuit continue to require the SEC to make only a *prima facie* showing of a securities law violation and likelihood that the wrong will be repeated.  *Schooler*, 902 F. Supp. 2d at 1345 & n.2 (collecting cases); *but see Smith v. SEC*, 653 F.3d 121,127-28 (2d Cir. 2011) (requiring the SEC to make "a substantial showing of likelihood of success as to both a current violation and the risk of repetition").   Other District Courts in this Circuit have required a likelihood of success, both before and after *Winter*, citing the Second Circuit standard.  *See, e.g.*, *S.E.C. v. Trabulse*, 526 F. Supp. 2d 1008, 1012 (N.D. Cal. 2007) (citing *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998)); *S.E.C. v.*

*Banc de Binary Ltd.*, No. 13-00993, -- F.Supp.2d. --, 2013 WL 4042280, *3-4 (D. Nev. Aug. 7, 2013).  The Ninth Circuit has yet to address the standard post-*Winter*.

Regardless, this Court need not determine which standard applies, because it finds that the SEC has established (1) a likelihood of success on the merits and (2) a reasonable likelihood that the wrong will be repeated.   In addition, to merit an asset freeze, the SEC must establish a likelihood of dissipation of the assets if relief is not granted.  *See Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (overruling the "possibility of dissipation" standard in *Fed. Sav. & Loan Ins. Corp. v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989)); *S.E.C. v. Schooler*, 902 F. Supp. 2d 1341, 1360 (S.D. Cal. 2012) (applying this standard to the SEC).  The Court concludes that the SEC has also made this showing.

### III.
### DISCUSSION

**A.**     **Adequacy of Service**

Federal Rule of Civil Procedure 4(h)(2) authorizes service on a foreign business entity in accordance with service prescribed by Rule 4(f) for individuals.  Under Rule 4(f)(3), a court may allow service by email and regular mail without any finding that this method of service is a "last resort" or "extraordinary relief."  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015-17 (9th Cir. 2002).   Rule 4(f)(3) is an "equal means" of effectuating service under the Federal Rules of Civil Procedure, and this Court has the discretion to determine when the "particularities and necessities" of a case "require alternate service of process under Rule 4(f)(3)."  *Id.* at 1016.

In accordance with the Court's TRO, on March 13, 2014 the SEC filed a declaration regarding service and proofs of service by email and regular mail.  [Doc. # 20.]  The SEC has also attempted service in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters on Mutual Wealth, Hullstar, Camber Alliance, and Kimrod Estate, and is

preparing a service request regarding Midlecorp.  (Declaration of Melissa Armstrong Regarding Service ¶¶ 8, 16, 19, 22, 25 [Doc. # 20].)

### 1.   Service on Mutual Wealth and Related Defendants

Fleet Mutual Wealth and MWF Financial Limited are the same entity. (Knickle Supp. Decl. ¶¶ 2; 5.)  In addition, Fleet Mutual Wealth, Hullstar, and Risort Partners are all part of "Fleet Mutual Wealth Group."  (Armstrong Decl. ¶ 5.)

The SEC served Fleet Mutual Wealth by email and UPS. (Armstrong Decl. Regarding Service ¶¶ 4-7.)  In addition, the SEC served MWF Limited by certified mail, care of the Office of the Secretary of the U.S. Securities and Exchange Commission.  (*Id.* ¶ 9, Exh. 3.)  It served Risort Partners by email and attempted service by UPS. (*Id.* ¶¶ 10-12.)  Finally, the SEC served Hullstar by UPS at its registered address in the United Kingdom, but UPS reported that it was unable to deliver because the recipient had moved.  (*Id.* ¶ 14.)  The Court concludes that service is sufficient because Fleet Mutual Wealth and Risort partners have been served.  Although the SEC has not successfully served Hullstar, it is part of Fleet Mutual Wealth.  (Armstrong Decl. ¶ 5.)  Moreover, service at the last known address is acceptable and comports with due process.  *See Rio Properties*, 284 F.3d at 1016.

### 2.   Service on Camber Alliance LLP, Kimrod Estate LLP, and Midlecorp Trade Ltd.

Camber Alliance, Kimrod Estate, and Midlecorp. were all served by UPS, signature required. (Armstrong Decl. Regarding Service ¶¶ 17, 20, 23  Exh. 5, Exh. 6, Exh. 7.)

**B.   The SEC Has Shown a Likelihood of Success On the Merits**

    **1.   The SEC Has Shown a Likelihood of Success on the Merits of its First Cause of Action that Mutual Wealth Violated Section 10(b) and Rule 10b-5 of the Securities Exchange Act**

Section 10(b) of the 1934 Securities Exchange Act, codified at 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Under Securities Exchange Act Rule 10b-5, it is "unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5.  In order to prevail on a Rule 10b-5 action, the SEC must establish that the defendant:  "(1) made a material misrepresentation or omission (2) in connection with the purchase of a sale or security (3) with scienter (4) in interstate commerce."  *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010).

The SEC presents evidence that Mutual Wealth made material misrepresentations and omissions.  First, it represented that it is registered with the SEC, but it is not.  (Declaration of H. Norman Knickle ¶¶ 13, 15, 18 [Doc. # 12].)  Second, it holds itself out as an investment firm that conducts "high-frequency trading," but instead it directs investor funds to offshore accounts.  (Knickle Decl. ¶ 6, Exh. 3; ¶ 7, Exh. 4; ¶ 10, Exh. 7; ¶ 12.)  Third, Mutual Wealth's website represents that it has a CEO, James McCoy, and a CFO, Robert Lansen, despite privately representing that these individuals are no longer associated with the company.  (Knickle Decl. ¶ 3, Exh. 1 at 6; ¶ 22, Exh. 14.)

These facts are material because they relate to the security being sold and the competence of Mutual Wealth to fulfill its obligations to its investors. "An omitted fact is material 'if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Platforms Wireless Int'l Corp.*, 617 F.3d at 1092 (citing *S.E.C. v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007)).

The above representations were made in connection with the sale of a security. The investor's accounts with Mutual Wealth are securities because they are investment contracts within the scope of section 2(1) of the Securities Act. *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99, 66 S. Ct. 1100, 1103, 90 L. Ed. 1244 (1946); *S.E.C. v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003); (Knickle Decl. ¶¶ 3-4, Exhs. 1-2 (website and brochure advertising the sale of securities)).

The SEC has provided evidence of scienter. "Scienter can be established by intent, knowledge, or in some cases 'recklessness.'" *Platforms Wireless Int'l Corp.*, 617 F.3d at 1092 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568–69 (9th Cir. 1990) (en banc)). For recklessness to constitute scienter, a court must determine that the conduct was "highly unreasonable" and "constitute[d] an extreme departure from standards of ordinary care." *Hollinger*, 914 F.2d at 1570. Recklessness can be inferred from circumstantial evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 391, 103 S. Ct. 683, 692, 74 L. Ed. 2d 548 n.30 (1983) ("circumstantial evidence can be more than sufficient" in a securities fraud case). The SEC provides evidence that Mutual Wealth represents that it is registered with the SEC when it is not. (Knickle Decl. ¶¶ 13, 15, 18.) It also purports to invest its customers' funds through a high-frequency trading scheme, when it actually sends the funds to offshore accounts. (*Id*. ¶ 6, Exh. 3; ¶ 7, Exh. 4; ¶ 10, Exh. 7; ¶ 12.) These false representations are unreasonable and constitute an extreme departure from the standards of ordinary care.

Finally, Mutual Wealth's conduct takes place in interstate commerce. Mutual Wealth's investors are located in several different states. (Knickle Decl. ¶ 19, Exh. 12.) It uses its website, social media, and emails to conduct its business throughout the United States. (*Id.* at ¶ 3, Exh. 1, ¶ 16, Exh. 10, ¶ 17, Exh. 11, ¶ 20, Exh. 13.)

Accordingly, the SEC has shown a likelihood of success on its first cause of action.

**2.** **The SEC Has Shown a Likelihood of Success on the Merits of its Second Cause of Action that Mutual Wealth Violated Sections 17(a)(1)-(3) of the Securities Act, 15 U.S.C. § 77q(a)(1)-(3)**[2]

A Section 17(a) action requires the SEC to establish the same elements as its Section 10(b) claim. *See S.E.C. v. Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007) (stating that both Section 17(a) and Section 10(b) and Rule 10b-5 forbid a material misstatement or omission, in connection with the offer or sale of a security, in interstate commerce). For the reasons given *supra*, in section III.1, the SEC has also established a likelihood of success on its second cause of action under Section 17(a) of the Securities Act.

---

[2] Section 17(a) of the Securities Act, codified at 15 U.S.C. § 77q(a), provides that:

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly--(1) to employ any device, scheme, or artifice to defraud, or--(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or--(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C.A. § 77q(a)(1)-(3).

3. **The SEC Has Shown a Likelihood of Success on the Merits of its Third Cause of Action that Mutual Wealth Violated Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and e(c)**

Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c), prohibit the "sale or delivery after sale of unregistered securities," unless an exemption from registration applies. *See Phan*, 500 F.3d at 902 (collecting cases). A *prima facie* case of a Section 5 violation is established by showing: (1) the defendant, directly or indirectly, has offered or sold securities; (2) without a registration in effect or filed with the SEC; (3) and used interstate transportation or communication in connection with the offer or sale. 15 U.S.C. §§ 77e(a) & 77e(c); *Phan*, 500 F.3d at 902.

The SEC has established a *prima facie* case for a violation of Section 5. First, Mutual Wealth offers and sells securities in the form of investment contracts. *See SW.J. Howey Co.*, 328 U.S. at 298-99; *Rubera*, 350 F.3d at 1090; (Knickle Decl. ¶¶ 3, 4, Exh. 1-2).

Second, Mutual Wealth is not registered with the SEC. (Knickle Decl. ¶ 13, Exh. 8.) Instead, it has filed several "Forms D" with the SEC asserting that it is exempt from registration. (*Id.*) The Forms D claim exemptions under Rules 504(b) and 506(b) of the Securities Act. (Knickle Decl. ¶ 13, Exh. 8 at 61.) These exemptions do not apply. Under 504(b), only offerings of less than $1,000,000 are exempt from registration. 17 C.F.R. § 230.504(b). Mutual Wealth's most recent Form D states that it has offered $92,000,000 in securities (Knickle Decl. ¶ 13, Exh. 8 at 60, 62), thus the exemption does not apply. Under Rule 506(c), general solicitation to investors is exempt from the registration requirement only if all purchasers are "accredited investors" and the issuer takes reasonable measures to verify that purchasers are accredited investors. 17 C.F.R. § 230.506(c)(2). Individuals who are "accredited investors" must have earned more than $200,000 for the last two years or joint income with a spouse of $300,000 for the past two years, or hold at least $1,000,000 in assets. 17 C.F.R. § 230.501(a). The SEC

presents evidence that at least one of Mutual Wealth's investors is not accredited under this definition.  (Knickle Decl. ¶ 14.)

Finally, Mutual Wealth sells securities through interstate commerce as evidenced by its sales to individuals in several different states.  (Knickle Decl. ¶ 19, Exh. 12.)

Therefore, the Court concludes that the SEC has established a likelihood of success on its claim under Sections 5(a) and (c) of the Securities Act.

**C.**   **The SEC Has Shown a Reasonable Likelihood of Repetition of Mutual Wealth's Acts Without a Preliminary Injunction**

 "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations," considering factors such as:

> the degree of scienter involved; the isolated or recurrent nature of the
> infraction; the defendant's recognition of the wrongful nature of his conduct;
> the likelihood, because of defendant's professional occupation, that future
> violations might occur; and the sincerity of his assurances against future
> violations.

*S.E.C. v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980) (citations omitted).  The likelihood of future violations can be established by showing past violations.  *Id.*

The SEC has presented evidence that Mutual Wealth misled investors by representing that:  (1) it is registered with the SEC; (2) it has a CEO and CFO who are no longer with the company; and (3) investor funds would be invested in securities, yet are sent overseas into Defendants' accounts and there is no evidence that any of these Defendants have U.S. brokerage accounts.  (Knickle Decl. ¶ 15; ¶ 3, Exh. 1 at 6; ¶ 22, Exh. 14; ¶¶ 10-11.)  In addition, there is evidence that since this Court issued the TRO, Mutual Wealth has continued to mislead investors by falsely stating on March 7, 2014 that it appeared in this Court and quashed the TRO.  (Armstrong Decl. ¶ 6, Exh. 2 [Doc. # 21].)

-10-

The SEC has also proffered evidence that Mutual Wealth's deceptive actions are widespread.  When the SEC applied for a TRO, it was aware of at least 150 investors in the United States who had collectively invested at least $300,000.  (Knickle Decl. ¶ 5.) The SEC now states that "operations are much larger in size and value than the Commission knew at the time it filed its application."  (Armstrong Decl. ¶ 4.)  Moreover, Mutual Wealth advertises to potential investors on the Internet through its website and social media sites, thus potentially reaching many future investors if not enjoined. (Knickle Decl. ¶ 3, Exh. 1, ¶ 16, Exh. 10, ¶ 17, Exh. 11, ¶ 20, Exh. 13.)

The SEC has shown a likelihood that Mutual Wealth will continue to mislead investors without an injunction.

**D.    The SEC Has Shown a Likelihood of Dissipation of Assets**

A district court has the authority to freeze assets under its "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief."  *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).   "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).   Courts consider a defendants' prior unlawful acts and the location of the assets in considering whether an asset freeze is warranted.   *See, e.g., id.* at 1085 (CEO's prior conduct of impermissibly compensating himself in contravention of his fiduciary duties was "more than capable of placing assets in his personal possession beyond the reach of a judgment."); *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) ("district court's finding regarding the likelihood of dissipation is far from clearly erroneous" where defendant had a "history of spiriting their commissions away to a Cook Islands trust."); *SEC v. Manor Nursing Centers, Inc. .,* 458 F.2d 1082, 1106 (2d. Cir. 1972) ("uncertainty existed with respect to the total amount of proceeds received and their location," thus asset freeze was warranted).

Here, Mutual Wealth has a history of transferring investors' funds to offshore accounts after receiving funds through misrepresentations. Moreover, the SEC has been unable to determine the location of Mutual Wealth's "actual base of operations or the identity and location of actual Mutual Wealth representatives." (Knickle Decl. ¶ 21.) Although Mutual Wealth was communicating with investors up until March 8, 2014, since then some investors have indicated that emails to Mutual Wealth have been returned as undeliverable. (Second Supplemental Declaration of H. Norman Knickle ¶ 8 [Doc. # 22].) Therefore, the Court concludes that there is evidence that dissipation of assets is likely without an injunction.

## V.

## CONCLUSION

In light of the foregoing, the SEC's request for a preliminary injunction is **GRANTED**.

DATED:     March 17, 2014

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE